# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

TEILL REYNOLDS,

**Petitioner,**

v.                                    CASE NO. 20-3185-SAC

SHANNON MEYER, et al.,

**Respondents.**

## MEMORANDUM AND ORDER

This matter is a petition for habeas corpus filed under 28 U.S.C. § 2254. For the reasons that follow, the court denies relief.

### Procedural background

Petitioner was convicted by a jury in the District Court of Wyandotte County, Kansas, of two counts of rape and one count of battery. He was sentenced to concurrent terms of life without parole for 25 years for the two rape convictions and a concurrent term of six months for the battery conviction.

The Kansas Court of Appeals (KCOA) affirmed the convictions on December 15, 2014. *State v. Reynolds*, 339 P.3d 412 (Table), 2014 WL 6909523 (Kan. Ct. App. 2014), *rev. denied*, Jul. 22, 2015 ("*Reynolds I*").

On July 31, 2015, petitioner filed a third amended motion to correct an illegal sentence. The trial court denied the motion on September 24, 2015, and petitioner filed an appeal.

On July 28, 2016, petitioner filed a motion for post-conviction relief under K.S.A. 60-1507. On January 30, 2018, the

Wyandotte County District Court denied relief, and petitioner filed an appeal.

On November 9, 2018, the KCOA affirmed the denial of petitioner's motion to correct an illegal sentence. *State v. Reynolds*, 429 P.3d 910 (Table), 2018 WL 5851617 (Kan. Ct. App. 2018)(unpublished opinion) ( ).

On October 18, 2019, the KCOA affirmed the denial of petitioner's action under K.S.A. 60-1507. *Reynolds v. State*, 450 P.3d 385 (Table), 2019 WL 5280795 (Kan. Ct. App. 2019)(unpublished opinion). On May 2020, the Kansas Supreme Court denied review (*Reynolds III*).

On July 10, 2020, petitioner filed the present application for habeas corpus relief.

### Factual background

The Kansas Court of Appeals summarized the facts of this case as follows:

> On the morning of May 18, 2011, T.R., Reynolds' 13-year-old daughter, contacted her aunt, Teah Reynolds (Teah), with a friend's cell phone while on a school bus. After corresponding via text message, T.R. called Teah and said she really needed to talk but could not talk over the phone because there were people around. After a brief conversation, Teah went to T.R.'s school to see her. Teah ultimately was not allowed to see T.R., however, because Teah was not on the approved list of visitors. Knowing that her aunt may not have been on the approved list, T.R. agreed to meet Teah in front of the school after school let out. But when Teah returned at the end of the school day, T.R. was not in the front of the school. Teah called the number from which T.R. had called earlier in the day and T.R. answered. T.R. said she was on the bus and was scared.
>
> Teah met T.R. at her bus stop. Teah noticed that T.R. was walking funny. T.R. got into Teah's car, started crying, and told Teah that Reynolds had inserted a flashlight

into her vagina the night before. She also told Teah that, on a previous occasion, he had allowed another person to perform oral sex on her and fondle her. Later, Teah, Teah's mother, T.R., and T.R.'s sister went to the police station to file a report. T.R. spoke to a police officer and was examined at Children's Mercy Hospital.

Reynolds was placed under arrest after he arrived at the police station where T.R. made her report. On May 20, 2011, Detective John Hudson picked Reynolds up from the jail, transported him to the detective bureau, and asked Reynolds to make a statement. Initially, Reynolds denied both allegations made by T.R. At some point, Captain Greg Lawson began assisting with the interrogation and Reynolds gave a statement. During that recorded statement, Reynolds made what the district court described as "some inculpatory statements."

Reynolds was charged with one count of aggravated indecent liberties with a child and two counts of rape. The aggravated incident liberties charge and one of the rape charges were alleged to have occurred on March 15, 2011. The other count of rape was alleged to have occurred on May 17, 2011. At the preliminary hearing on August 23, 2011, T.R. testified that she was certain the first incident occurred on March 15, 2011. On October 19, 2011, the State filed an amended information charging Reynolds with two counts of rape and one count of battery. This time, however, one of the rapes was alleged to have occurred on November 7, 2010, and one on May 17, 2011.

Prior to trial, the State made a motion for a court order allowing it to introduce Reynolds' police statement at trial. A hearing under *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), was held on October 5, 2011, to determine the voluntariness and thus admissibility of Reynolds' statement. Detective Hudson testified at the hearing and provided the following information. Hudson read Reynolds his *Miranda* rights prior to interrogating him. Hudson then read a waiver of rights form to Reynolds and had Reynolds place his initials beside each right to signify that he understood those rights. Hudson made no threats to Reynolds during this process. Reynolds voluntarily signed the waiver of rights form. Later, Hudson asked Reynolds if he would take a CVSA, a type of lie detector test. Reynolds agreed, and the CVSA was conducted at the internal affairs unit.

On cross-examination, Detective Hudson testified he had spent about 3 hours with Reynolds at the detective bureau but only talked about the case for about 1 1/2 hours. At about 1 or 1:30 p.m., they left to go to the internal affairs unit in a different building because that was where the necessary CVSA equipment was located. Captain Lawson performed the CVSA. During the CVSA, Lawson was the only person in the room with Reynolds. Hudson was outside the room and testified that he could hear everything Lawson said but could not hear everything Reynolds said. Hudson began preparing to record Reynolds' statement at 4:45 p.m. Prior to recording the statement, Hudson went over the waiver of rights form with Reynolds again. After recording the statement, Hudson took Reynolds back to jail.

Reynolds testified to a completely different version of events. Reynolds said that when Detective Hudson picked him up from the jail, Reynolds asked for an attorney, whom he claimed already had been retained by him in an unrelated criminal matter. Reynolds testified that Hudson said he would call the attorney, but to Reynolds' knowledge, he never did. Reynolds told Hudson a total of three or four times before and during the time he was at the detective bureau that he did not want to proceed without his attorney. Reynolds also denied that he spoke to Hudson about a lie detector test. Reynolds claimed that he was threatened before giving his recorded statement. Reynolds noted that he made several references to the threats made against him during the recorded statement but that the recording was turned off and on many times throughout the day.

After hearing the evidence and arguments by both parties, the district court found Reynolds' statement was freely and voluntarily given; therefore, it ruled the statement would be admissible at trial.

Before trial, the State made an oral motion in limine to exclude T.R.'s school disciplinary records, which Reynolds intended to introduce into evidence. The State argued the records had no probative value and were not relevant. Reynolds' appointed attorney, KiAnn McBratney, argued that the records were going to be used to show that T.R. had behavioral problems, that Reynolds disciplined her for these problems, and that she fabricated the allegations because she was mad at him. The district court granted the motion and excluded the records on the basis that they contained specific instances of conduct that were inadmissible.

At trial, T.R. testified that the first sexual incident involving Reynolds occurred when she was in eighth grade. In contrast to her testimony at the preliminary hearing, she stated at trial that she could not remember the month in which the incident occurred. On the night in question, T.R., her sister, and Reynolds' girlfriend Veronica went to Riverside to get some candy. During this car trip, Veronica was pulled over for having a broken taillight and was arrested. Reynolds and a friend of his picked up T.R. and her sister. Reynolds' friend dropped the three of them off at their house and left. T.R. kept Veronica's purse and cell phone and gave them to Reynolds after arriving home. Later, a text was delivered to Veronica's phone asking if T.R. was up. T.R. stated that she did not know the name of the person the text came from but that it was somebody Veronica was communicating with. T.R. stated she knew it was not her boyfriend, whom she had texted with the phone earlier that day.

T.R. testified that sometime after she had fallen asleep in her bed, Reynolds woke her up. Reynolds and T.R. went into Reynolds' room. T.R. said that Reynolds confronted her about the identity of the person who had sent the text to Veronica's phone. T.R. told him that she did not know. She testified that Reynolds then told her that he had a couple people lined up for her. Thereafter, Reynolds made her take off her clothes and lie down on his bed. Reynolds then put a hat over her head. At this point, T.R. said she heard a knock at the front door. She heard Reynolds and another person come in the room and then heard the door shut as Reynolds left the room. After Reynolds left, the person in the room licked her vagina and then stuck his finger in her vagina. This went on for about 20 to 30 seconds. This person did not say anything to her. T.R. then stated Reynolds came in the room and turned on some music. T.R. testified that she was crying and apologized for not telling Reynolds that Veronica was cheating on him. The other man left after Reynolds said they would have to do this another time. T.R. said she told her sister about the incident after it happened, but her sister did not believe her. T.R. testified that she was too scared to tell anyone in a position of authority about it.

T.R. next testified about the events of May 17, 2011. On that night, after T.R. went to bed, Veronica and Reynolds had an argument and Veronica left. After Veronica left, Reynolds came into T.R.'s room, woke her up, and told her to go into the living room. Once in the

living room, Reynolds told T.R. that she had been lying and acting up. Reynolds then demanded T.R. take her clothes off. After she did what Reynolds said, he asked her if she knew how to "strip pole dance." Reynolds told T.R. to lie down on the couch, which she did. He then retrieved a flashlight from his bedroom, handed it to T.R., and told her to "stick this up your coochie." T.R. attempted to comply, but it would not fit. Reynolds then put some lotion on the handle of the flashlight and stuck it inside T.R.'s vagina. Sometime before putting the lotion on the flashlight, Reynolds also told T.R. to "suck on [the flashlight] like it was a dick."

McBratney did not cross-examine T.R. However, she did cross-examine T.R.'s aunt, Teah, about why T.R. initially reported that the date of the first alleged incident was March 15, 2011, and then changed the date to November 7, 2010. Teah confirmed that when she and T.R. went to the police station to report the crime, the first event was said to have occurred on March 15, 2011. Teah stated that T.R. could not give specific dates, so she and the police officer asked T.R. questions in an attempt to determine the date. Teah said T.R was able to tell them that it was cold outside, that she was living on 5th Street, and that Mosetter Reynolds, Teah's sister, was in town. Teah also testified that Mosetter visited both in November 2010 and March 2011 and that Reynolds moved his family to 5th Street in November 2010.

Reynolds testified on his own behalf at trial. He denied both allegations of rape against T.R. Although Detective Hudson earlier testified that Reynolds had initialed and signed a waiver of rights form before giving a recorded statement to the police, Reynolds denied ever having done so. Reynolds testified that it was actually Hudson who initialed and signed the document. Reynolds also testified that before giving his recorded statement, he asked three times to have his attorney present. Reynolds said Hudson gave him a piece of paper to read once the recording started and told him that if he did not read it, Hudson would tell the district attorney that Reynolds was "an animal" and to sentence him to 100 years.

The jury found Reynolds guilty of two counts of rape and one count of battery. After trial, Reynolds filed an untimely motion for a new trial alleging ineffective assistance of counsel. New counsel was appointed for Reynolds. His new attorney filed another untimely motion for a new trial alleging several instances of

alleged ineffective assistance of counsel. An evidentiary
hearing was held, and the motion for a new trial was
denied.

At sentencing, Reynolds orally moved to continue the
hearing based on an alleged problem with the phones in
the jail that had prevented Reynolds from contacting his
character witnesses. That motion was
denied. Reynolds then orally moved for a downward
departure, citing his lack of significant criminal
history and the fact that he was a contributing member of
society prior to his arrest. This motion also was denied.
Under Jessica's Law, K.S.A.2010 Supp. 21-4643(a)(1)(B),
the district court ultimately sentenced Reynolds to
concurrent life sentences without the possibility of
parole for 25 years for his two rape convictions.

*Reynolds I,* 2014 WL 6909523, *1-4 (Kan. Ct. App. 2014).

## Standard of review

This matter is governed by the Antiterrorism and Effective
Death Penalty Act (AEDPA). As amended by the AEDPA, 28 U.S.C. §
2254 limits the power of a federal court to grant an application
for a writ of habeas corpus. Where a petitioner seeks relief on
claims that were adjudicated on the merits in state court
proceedings, § 2254(d) provides that habeas relief "shall not be
granted with respect to [such a] claim ... unless the adjudication
of the claim:

(1) resulted in a decision that was contrary to, or
involved an unreasonable application of, clearly
established Federal law, as determined by the Supreme
Court of the United States; or
(2) resulted in a decision that was based on an
unreasonable determination of the facts in light of the
evidence presented in the State court proceeding."

28 U.S.C. § 2254(d)(1) and (2).

These rules create "a difficult to meet and highly deferential
standard for evaluating state-court rulings, which demands that

state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quotations omitted). *See also Kernan v. Hinojosa*, 136 S. Ct. 1603, 1604 (2016) (*per curiam*) (stating that "[i]f the state courts adjudicate the prisoner's federal claim 'on the merits,' § 2254(d), then AEDPA mandates deferential, rather than *de novo*, review, prohibiting federal courts from granting habeas relief" unless the petitioner makes the necessary showing under 2254(d)).

A federal court applying this standard "reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Wilson v. Sellers,* 584 U.S. ----, 138 S.Ct. 1188, 1192 (2018).

Under § 2254(d)(1), a state-court decision is "contrary to" the Supreme Court's clearly established law if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court need not make reference to relevant Supreme Court decisions, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam).

A state-court decision is an "unreasonable application" of clearly established Supreme Court law if the decision "correctly identifies the governing legal rule but applies it unreasonably to

the facts of a particular prisoner's case." *Williams,* 529 U.S. at 407-08. Under the AEDPA, a federal court may grant a writ only where there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with Supreme Court precedents. *Harrington,* 562 U.S. at 102.

## Discussion

### Petitioner's claim of actual innocence

Petitioner first asserts a claim of actual innocence, claiming that newly discovered evidence supports his release. He presents this claim in his motion to amend (Doc. 18)[1]. The claim was not presented in the state courts; rather, petitioner seeks to advance it under the exception that allows a petitioner to proceed on a time-barred or defaulted claim to avoid a miscarriage of justice. "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar [or] ... expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). *See also Herrera v. Collins*, 506 U.S. 390, 404 (1993) (explaining that this exception must be supported "with a colorable showing of factual innocence.").

The evidence in question concerns Detective John Hudson, who conducted the initial questioning of petitioner and testified during the criminal proceedings against him. Detective Hudson retired from the Kansas City, Kansas, Police Department in 2011

---

[1] The court grants the motion to amend and has considered its contents.

after he developed difficulty in performing his job duties. He eventually was diagnosed with PTSD and was awarded disability benefits. Litigation concerning that award is described in *Hudson v. Bd. of Directors of the Kansas Pub. Employees Ret. Sys.*, 388 P.3d 597 (Kan. Ct. App. 2016). That decision was published after petitioner filed his action under K.S.A. 60-1507.

Petitioner argues that the information concerning Detective Hudson's PTSD diagnosis and its impact on his employment performance establishes that he was not a reliable witness at the time he testified in petitioner's trial. Petitioner reasons that these facts show that he is innocent.

As stated, a "credible showing of actual innocence" allows a habeas court to consider an untimely or defaulted habeas claim. *McQuiggin,* 569 U.S. at 392. The Tenth Circuit recognizes that this exception "is rare and will only be applied in the extraordinary case." *Lopez v. Trani*, 628 F.3d 1228, 1231 (10th Cir. 2010) (quotations omitted).

"Simply maintaining one's innocence, or even casting some doubt on witness credibility, does not necessarily satisfy this standard." *Frost v. Pryor*, 749 F.3d 1212, 1232 (10th Cir. 2014). Rather, "to claim actual innocence a petitioner must present new, reliable evidence that was not presented at [or available for] trial. Such evidence typically consists of 'exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence.'" *Rose v. Newton-Embry*, 194 F. App'x 500, 502 (10th Cir.

2006) (unpublished) (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)).

Petitioner has not presented the sort of new evidence required to support a claim of actual innocence. The information he presents shows that Detective Hudson was under considerable emotional and mental strain at the time he investigated the criminal charges against petitioner and during petitioner's prosecution. It does not establish that the prosecution of petitioner was improper or tainted or that anyone involved in the proceedings withheld exculpatory evidence. Petitioner's bare reference to Detective Hudson's personal circumstances is insufficient to support a claim of actual innocence.

**Petitioner's claim the state lacked subject matter jurisdiction**

Petitioner claims the state lacked jurisdiction due to the failure of the charging document to charge an off-grid crime and to address the element of age. The Kansas Court of Appeals (KCOA) has considered this claim twice. In the first instance, in petitioner's appeal from the denial of his motion to correct an illegal sentence, the KCOA rejected the claim because it challenged petitioner's convictions rather than his sentences. *Reynolds II*, 2018 WL 5851617 at *1-2. In the second instance, the KCOA denied relief in petitioner's appeal from the denial of his action brought under K.S.A. 60-1507, citing the holding of the Kansas Supreme Court that "charging document deficiencies do not remove subject matter jurisdiction over criminal case" because "subject matter

jurisdiction is granted to the courts by the Kansas Constitution." *Reynolds III*, 2019 WL 5280795 at *4 (citing *State v. Dunn*, 375 P.3d 332 (Kan. 2016)). The KCOA held that the charging documents, by naming the defendant and identifying the date of crime alleged, "inherently include the defendant's age" and provide the defendant the requisite notice and opportunity to defend. *Id.*

First, to the extent the KCOA's decision rests upon state law, petitioner cannot obtain habeas corpus relief. "A habeas petitioner is only entitled to relief . . . for alleged violations of federal rights, not for errors of state law." *Bullock v. Carver*, 297 F.3d 1036, 1055 (10th Cir. 2002) (*citing Estelle v. McGuire*, 502 U.S. 62, 67 (1991)); *Blaurock v. Kansas*, 686 F. App'x 597, 613 (10th Cir. 2017). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67-68.

In ruling on this claim, the KCOA panel also applied *Chapman v. California*, 386 U.S. 18, 22-24 (1967), stating that "a court will declare a constitutional error harmless only 'where a party benefitting from the error proves beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, i.e., proves there is no reasonable possibility that the error affected the verdict.'" *Reynolds III*, 2019 WL 5280795 at *6.

The KCOA panel stated that Counts One and Two in the charging documents alleged that petitioner committed an off-grid felony offense of the rape of a child under 14 and that petitioner was 18 or older

at the time of the crimes. It also noted petitioner's trial testimony that he and police officers had discussed his possible sentence under Jessica's Law. It concluded that in light of the entire record, the failure to expressly list Jessica's Law in the charging documents would not change the outcome of the trial. *Id*.

A federal court reviewing a state court's *Chapman* decision in habeas corpus "may not award habeas relief under § 2254 unless *the harmlessness determination itself was unreasonable*." *Davis v. Ayala*, 576 U.S. 257 (2015) (emphasis in original). Here, the KCOA's assessment of the record and application of *Chapman* in petitioner's case is reasonable, and this court agrees that petitioner had sufficient notice of, and opportunity to defend against, the charges. Petitioner is not entitled to relief on this claim.

**Procedurally defaulted claims**

Respondent asserts that five of petitioner's claims were procedurally defaulted: denial of the right to present a defense, prosecutorial misconduct, insufficiency of the evidence, solicitation of false testimony, and malicious prosecution.

First, petitioner's claim that he was denied the right to present a defense was not explicitly presented in his post-conviction action. The KCOA considered his seven assertions of ineffective assistance of counsel and held that his briefing was insufficient to show error. The KCOA stated, in part:

> [Petitioner] makes conclusory statements in his brief
> for which he provides no factual support from the
> record. His brief only mentions his complaints about
> his trial counsel's performance in passing. Issues

raised incidentally in a brief and not argued therein
are deemed waived and abandoned. *Russell v. May*, 306
Kan. 1058, 1089, 400 P.3d 647 (2017).

*Reynolds III*, 450 P.3d 385, 2019 WL 5280795, *3.

Next, petitioner's challenge to the sufficiency of the
evidence and his claims of prosecutorial misconduct, specifically,
threatening or intimidating a witness, soliciting false testimony,
and malicious prosecution, were presented for the first time in an
action under K.S.A. 60-1507. The state district court rejected the
claim alleging insufficient evidence due to petitioner's failure to
provide more than conclusory statements and his failure to argue
the issue in his direct appeal. The KCOA agreed that this was an
issue that could have been presented on appeal, citing Kan. S. Ct.
R. 183(c)(3)[2] , and held that it therefore was barred from appellate
review. *Reynolds III, id.* The KCOA also found that petitioner's
claims alleging prosecutorial misconduct, which were new claims
presented in the 60-1507 action, could have been presented in
petitioner's direct appeal and therefore were barred from review.
*Id.*

The habeas corpus statute, in 28 U.S.C. § 2254(b)(1), provides
that a writ of habeas corpus may not be granted unless it appears
that the petitioner has exhausted state law remedies or that no
adequate state remedies are available or effective to protect the

---

[2] Kan. S. Ct. R. 183(c)(3) states: A proceeding under K.S.A. 60-1507 ordinarily
may not be used as a substitute for direct appeal involving mere trial errors
or as a substitute for a second appeal. Mere trial errors must be corrected by
direct appeal, but trial errors affecting constitutional rights may be raised
even though the error could have been raised on appeal, provided exceptional
circumstances excuse the failure to appeal.

petitioner's rights. *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Dever v. Kan. State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994). The petitioner has the burden of showing the exhaustion of available state remedies for the claims presented. *See Miranda v. Cooper*, 967 F.2d 392, 398 (10th Cir. 1992).

Under the procedural default doctrine, a federal court ordinarily may not review habeas claims that were procedurally defaulted in state court, that is, claims that were denied in state court on an adequate and independent state procedural rule. To avoid this procedural bar, the petitioner must establish either cause for the procedural default and prejudice arising from it or that the refusal of the federal court to review the claim will result in a fundamental miscarriage of justice. *Davila v. Davis*, 137 S. Ct. 2058, 2064-65 (2017); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Petitioner has not satisfied these standards. In his traverse (Doc. 25), petitioner asserts that he asked his appellate counsel to raise certain issues that she declined to pursue. In support, petitioner attaches a letter from his counsel discussing the issues she intends to raise and explaining why she will not present others (*Id.*, Attach. 1). However, none of the issues identified as procedurally defaulted are addressed in that correspondence. Moreover, if a petitioner relies on counsel's failure to present claims to support cause for a default, that ineffective assistance of counsel "generally must 'be

presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000).

**Petitioner's statement to police**

Petitioner claims his statement to police was involuntary. Although the petition contains only a bare statement of the claim, the court notes that on direct appeal, petitioner alleged that his trial counsel erred in failing to renew her objection to the statement when it was introduced at trial. However, he acknowledged that this claim of ineffective assistance of counsel was not raised in the trial court, despite the fact that the district court appointed new counsel for an evidentiary hearing on the claim of ineffective assistance. The KCOA noted that the statement was held to be admissible in a pretrial hearing conducted under *Jackson v. Denno*, found that there was no evidence in the record upon which it could determine why counsel did not renew an objection, and determined that this claim had not been preserved for appeal. *Reynolds I*, 2014 WL 6909523, *14 (citing *Williams,* 299 Kan. at 1048–49 (declining to consider ineffective assistance of counsel claim for first time on direct appeal)).

In his traverse, petitioner argues this claim should be considered, stating that he claimed the statement was coerced in his action under 60-1507, that his counsel had a duty to protect her client's interests, and that manifest injustice will occur if the claim is not considered because he is actually innocent.

The KCOA's decision in petitioner's 60-1507 action found that the district court did not address petitioner's claim that it erred in admitting his statement because it was involuntary. The KCOA held the error harmless because the issue was, or could have been, raised in petitioner's direct appeal and was barred by Kan. S. Ct. R. 183(c)(3). And, although the appellate decision in that action shows that petitioner presented seven claims of ineffective assistance, the claim concerning the voluntariness of his statement is not among them. *Reynolds III*, 2019 WL 5280795, at *3. Finally, petitioner's bare claim of innocence is insufficient to support review of his defaulted claim.

**Ineffective assistance of trial counsel**

The petition identifies three instances of allegedly ineffective assistance of counsel: (1) counsel failed to file a motion to arrest judgment; (2) counsel failed to cross-examine a witness; and (3) counsel failed to investigate or gather police reports.

Petitioner presented the issue concerning the failure to move to arrest judgment in his action under 60-1507. There, the KCOA found that all of petitioner's seven claims of ineffective assistance failed, stating:

> Reynolds' briefing of this issue is insufficient to show the district court erred in denying him a new trial. He makes conclusory statements in his brief for which he provides no factual support from the record. He also fails to properly argue or analyze the issue. His brief only mentions his complaints about his trial counsel's performance in passing. Issues raised in a brief and not argued therein are deemed waived and abandoned. *Russell*

*v. May*, 306 Kan. 1058, 1090, 400 P.3d 647 (2017). Because
Reynolds fails to explain why he believes any of these
conclusory statements are entitled to appellate review
and provides no factual support or analysis for his
claims, he has waived and abandoned them.

*Reynolds III*, 2019 WL 5280795, *3.

Next, although petitioner's assertion of ineffective
assistance concerning the failure to cross-examine a witness is
devoid of detail, the court agrees with respondent's assumption
that petitioner refers to trial counsel's failure to cross-examine
T.R., the minor victim. Petitioner challenged that decision in his
direct appeal, which the KCOA addressed as follows:

Reynolds argues that McBratney's decision not to cross-
examine T.R. fell below an objective standard of
reasonableness. Whether to conduct cross-examination is
a strategic trial decision over which an attorney has
exclusive control after consulting with his or her
client. *Cheatham,* 296 Kan. at 445.

Again, Reynolds does not argue on appeal that McBratney
inadequately investigated the facts or law surrounding
her decision not to cross-examine T.R. Instead, Reynolds
asserts McBratney should have attacked T.R.'s credibility
based on T.R.'s statements at the preliminary hearing
that she was first raped on March 15, 2011. However, T.R.
did not provide a particular date of the first offense in
her direct testimony at trial. Further, McBratney
explained that she chose not to cross-examine T.R.
because her allegations were supported by medical and
photographic evidence and, in McBratney's opinion,
pressing T.R. could have inadvertently turned the jury
against Reynolds. McBratney also stated that it is
possible to attack the credibility of a victim's
statements through other witnesses at trial. McBratney
cross-examined Teah extensively about the explanation she
provided with regard to the process she and T.R. initially
went through to determine that the first offense occurred
on March 15, 2011.

The district court found McBratney's decision not to
cross-examine T.R. was trial strategy and thus was
virtually unchallengeable in terms of proving deficient

performance. Its finding is supported by substantial competent evidence. Therefore, we find no deficiency in McBratney's performance in deciding not to cross-examine T.R.

*State v. Reynolds*, 2014 WL 6909523, *12.

The KCOA's decision cited *Edgar v. State*, 283 P.3d 152 (Kan. 2012), which incorporates the standards announced by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984) to evaluate claims of ineffective assistance of counsel, namely, a defendant must show both that counsel's performance was deficient and that the deficient performance was sufficiently serious to prejudice the defense and deny the defendant a fair trial. *Edgar v. State*, 283 P.3d 152, 154 (2012).

The KCOA identified the correct standard, and its analysis of the record is reasonable and supported by the record.

Finally, petitioner alleges ineffective assistance of trial counsel based upon a failure to investigate or gather police reports. Because petitioner did not present this claim in the state courts on either direct appeal or his action under 60-1507, the claim is procedurally defaulted, and this court may consider it only if petitioner shows cause and prejudice or that a fundamental miscarriage of justice will occur if the court fails to consider it. Petitioner makes only vague statements concerning the failure to present this claim, asserting broadly that he has shown cause and prejudice, that he exhausted his remedies in state court, and that he has shown exceptional circumstances. Doc. 25, pp. 13-14.

These allegations are insufficient to overcome his procedural default, and the court concludes that review of this claim is barred.

## Pending motions

Three motions remain for decision. First, the respondent's motion for an extension of time (Doc. 21) is moot and is denied. Petitioner's motion to arrest judgment (Doc. 20) and motion for summary judgment (Doc. 26) both seek relief on the claim that the Kansas courts lacked jurisdiction due to the alleged deficiencies in the charging documents. Because the court has concluded that petitioner is not entitled to relief on this claim, these motions are denied. Petitioner does not present new or persuasive arguments.

## Certificate of appealability

Under Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability should issue "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court identifies the specific issue that meets that showing. 28 U.S.C. § 2253.

The court concludes that the present record does not warrant the issuance of a certificate of appealability. For the reasons set forth, the court concludes the petitioner has not made a substantial showing that he is entitled to relief.

IT IS, THEREFORE, BY THE COURT ORDERED petitioner's motion to amend (Doc. 18) is granted.

IT IS FURTHER ORDERED petitioner's motion to arrest judgment (Doc. 20) is denied.

IT IS FURTHER ORDERED respondent's motion for extension of time (Doc. 21) is denied as moot.

IT IS FURTHER ORDERED petitioner's motion for summary judgment (Doc. 26) is denied.

IT IS FURTHER ORDERED the petition for habeas corpus is dismissed and all relief is denied.

IT IS FURTHER ORDERED no certificate of service will issue.

**IT IS SO ORDERED.**

DATED:  This 23rd day of June, 2021, at Topeka, Kansas.


S/ Sam A. Crow

SAM A. CROW
U.S. Senior District Judge